Hallie Lamont RANDOLPH, Plaintiff,

v.

CIBC WORLD MARKETS, Defendant.

No. 01 Civ. 11589(RWS).

United States District Court,
S.D. New York.

July 24, 2002.

**400**

Joseph Fleming, New York City, for Plaintiff.

Mayer, Brown, Rowe & Maw, New York City, By: Gary D. Friedman, for Defendant, of counsel.

## OPINION

SWEET, District Judge.

Defendant CIBC World Markets ("CIBC") has moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the second and third claims for relief in the complaint of plaintiff Hallie Lamont Randolph ("Randolph") as barred by the one-year statute of limitations applicable to these claims.

For the following reasons, the motion is granted.

### Facts

The following facts are undisputed.

Randolph, an African–American male, commenced his employment with CIBC in November of 1986. He was fired from his employment with CIBC on October 31, 2000. He does not complain of any actions taken after this date.

On February 28, 2001, Randolph timely filed a charge of race discrimination with the EEOC. Randolph requested a Right to Sue, which is a prerequisite to commencing any suit in the federal district court pursuant to Title VII, by letter dated August 20, 2001.

The EEOC was located at 7 World Trade Center, New York, New York. On September 11, 2001, its offices—and therefore its files relating to Randolph—were destroyed in the attacks on the World Trade Center. The office of Randolph's counsel is located two blocks from Ground Zero, and was unable to open for a month after the attacks.

On several occasions in October 2001, Randolph's counsel attempted to contact the EEOC. On November 5, 2001, the EEOC contacted Randolph to determine whether he wanted a Right to Sue. That Right to Sue letter was issued on November 16, 2001 and was received by plaintiff on November 26, 2001.

On December 19, 2001, Randolph filed a complaint alleging (1) discrimination on account of his race and color in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–5 *et seq.;* (2) intentional infliction of emotional distress under New York common law; and (3) defamation under New York common law.

CIBC filed the motion to dismiss on March 5, 2002, and it was considered fully submitted on May 15, 2002.

### Discussion

**I.  The Filing Was Untimely In the Absence of Some Exception**

Randolph does not argue that Section 215(3) of the New York Civil Practice Law and Rules establishes a one-year statute of limitations for intentional infliction of emotional distress and defamation under New York common law. *E.g., Abdallah v. City of New York,* 2001 WL 262709, at \*5 (March 16, 2001) (intentional infliction of emotional distress); *E.E.O.C. v. Die Fliedermaus,* 77 F.Supp.2d 460, 473 (S.D.N.Y. 1999) (defamation).

█ Further Randolph does not contest that statute of limitations began running on October 31, 2000. Therefore, in the absence of tolling or other extension of time, Randolph's complaint which was filed on December 19, 2001 was untimely.

**II.  As a Result of the Executive Order, Randolph's Statute of Limitations Period Ended on November 8, 2001**

█ Randolph's only argument is that the statute of limitations was extended by an executive order issued in the wake of the September 11, 2001 attacks.

The World Trade Center was attacked on September 11, 2001. On that day, New York Governor George E. Pataki (the "Governor") issued Executive Order Number 113, declaring a disaster state of emergency in the State of New York. On September 12, 2001, the Governor issued Executive Order Number 113.7, continuing Executive Order Number 113 and amending it to provide for the temporary suspension of statutes of limitations and time in which to take an appeal.

On October 4, 2001, Executive Order 113.28 further modified the original order. First, Executive Order Number 113.7 was extended until October 12, 2001, at 11:59 p.m. This order affected the running of *all* statutes of limitations. Further, the order provided an additional period of time "to the extent that any person or an attorney for any person has been directly affected by the disaster emergency." In such a situation, CPLR § 201,[1] which governs statutes of limitations, was modified for the period from October 12, 2001, at 11:59 p.m., to November 8, 2001, at 11:59 p.m. as follows:

> In the event that any person or an attorney for a person has been directly affected by the disaster emergency, the limitation period for an action by or on behalf of such person shall be extended until the date on which this Order terminates.

Executive Order Number 113.28.

Randolph alleges that his attorney had been directly affected by the disaster emergency and thus he should qualify for the extension of the statute of limitations. As of yet, courts have not had the opportunity to address the interpretation of this

---

1.  Section 201 provides:
    An action ... must be commenced within the time specified in this article unless a different time is prescribed by law or a shorter time is prescribed by written agreement. No court shall extend the time limited by law for the commencement of an action.
    C.P.L.R. § 201.

specific order. However, Randolph has satisfied this standard based on the plain meaning of "directly affected." Randolph's counsel's office was closed for a month, and his counsel likely had no access to Randolph's files. Randolph therefore qualifies for the extension of time provided by the Order.

Pursuant to the Order, the limitation period for Randolph's action "shall be extended until the date on which this Order terminates." The Order terminated on November 8, 2001, at 11:59 p.m. The limitation period was therefore extended until November 8, 2001. That means that anyone who was affected by the World Trade Center attacks and whose statute of limitations period expired prior to November 8, 2001, were given a grace period of up until November 8, 2001 to satisfy the statute. Randolph's statute of limitations normally would have ended on October 30, 2001. Because of the Order, it was extended to November 8, 2001.

Randolph urges an extraordinary interpretation of the Order as a tolling provision. According to his argument, anyone who was affected could have their period of limitations tolled for the number of days from September 11, 2001 to November 8, 2001. Thus, a party facing a five-year statute of limitations that began running on September 11, 2001 could possibly not have to file until November 8, 2006. The state of emergency caused by the attacks on September 11, 2001 no longer exists and on its fifth anniversary on September 11, 2006 will no longer interfere with a party's ability to meet the statute of limitations. The Order only makes sense if it applies to parties whose limitations would have run out in the period from September 11 to November 8, 2001 and then allows the parties a grace period due to the state of emergency.

■■■ Randolph's interpretation also does not square with another provision of the Order, which appears to allow courts to extend the period of statutes of limitations. C.P.L.R. § 2004 permits courts to extend the time fixed by any statute, etc. "as may be just and upon good cause shown" "except where otherwise expressly prohibited by law." Normally, courts are "expressly prohibited" by C.P.L.R. § 201 from extending the periods of statutes of limitations. The Order states, however:

> Notwithstanding any provision of law to the contrary, in the event that any person or an attorney for any person has been directly affected by the disaster emergency, a court may extend the time fixed by any statute, rule or order for doing any act, upon such terms as may be just and upon good cause shown, whether the application for extension is made before or after the expiration of the time fixed, so long as the act required to be taken is taken prior to the expiration of this Order.

Executive Order Number 113.28. Therefore, although proscribed by C.P.L.R. § 201, a court could in fact extend the statute of limitations period for good cause shown as long as any required action was taken prior to November 8, 2001. That suggests that the limitations period was intended to end on November 8, 2001. Only parties who made the proper showing prior to that time could potentially extend their statute of limitations beyond November 8, 2001 or the actual date of limitation, whichever was later. Randolph did not take any action to extend the time to file his complaint prior to November 8, 2001, at 11:59 p.m.

Therefore, the statute of limitations on Randolph's state law claims of intentional infliction of emotional distress and defamation ran out on November 8, 2001, at 11:59 p.m. His complaint filed on December 19, 2001 was untimely and the two claims are hereby dismissed.

## Conclusion

For the foregoing reasons, Counts II and III of Randolph's complaint are dismissed as untimely.

It is so ordered.